UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | |
|---|---|
| MARK S. HERNANDEZ<br>       Plaintiff,<br>vs.<br>WILLIAM RAINEY HARPER COLLEGE,<br>       Defendant. | Case No. 10-cv-2054<br>Hon. Matthew F. Kennelly |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

The College employed Plaintiff during the 2007-2008 academic year. He was hired as Head Baseball Coach for the 2008 Season; he received a fixed term contract which ran from January 14, 2008 to May 23, 2008, and a contract for Fall Baseball which ran from August 10, 2007 to November 15, 2007. Plaintiff was employed as an adjunct instructor and was contracted to teach three classes during 2007-2008. He completed each contract and was fully compensated.

As with all new hires at the College, Plaintiff was required to submit to a criminal background check ("CBC"). The information provided by Plaintiff for the non-fingerprint CBC was transmitted by the College's Police Department (the "Department") to the Illinois State Police ("ISP") for processing. Plaintiff's non-fingerprint CBC was returned indicating multiple conviction hits. Significantly, Plaintiff pled guilty to DUI in 1991 and criminal damage to property in 2001 or 2002. To determine whether the convictions pertained to Plaintiff, he was required to provide fingerprints for a further CBC. In October 2007, the Department transmitted Plaintiff's fingerprints to the ISP for processing. Plaintiff was not the only coach asked to provide fingerprints during 2007-2008. Both prior to and after 2007-2008, the College required employees to submit fingerprints if their non-fingerprint CBC indicated multiple convictions.

1

The College never received the results of Plaintiff's initial fingerprint CBC, and in April 2008, Plaintiff was informed that he would have to provide a second set of fingerprints. On May 21, 2008, Plaintiff was cleared for employment without having to provide fingerprints again.

During the 2008 Season, Plaintiff was ejected from a game for repeatedly using the word **"fuck"** when addressing an umpire. The National Junior College Athletic Association ("NJCAA") issued Plaintiff a one-game suspension for his conduct. Plaintiff also permitted a student athlete to drive an unauthorized vehicle onto the College's baseball field. In addition, Plaintiff's supervisor, Douglas Spiwak ("Spiwak"), received complaints from athletic department staff and returning baseball players concerning Plaintiff's treatment of them. As a result, Spiwak decided not to renew Plaintiff's contract following the 2008 Season. This litigation followed.

The record demonstrates that the requests for a fingerprint CBC and the decision not to renew Plaintiff's employment were neither the result of discrimination nor retaliation. Accordingly, this Court should grant the College's summary judgment motion.

## II. ARGUMENT

### A. Plaintiff Failed to Exhaust His Administrative Remedies As To Count II.

A plaintiff has 300 days from the date of the alleged unlawful employment practice to file a charge of discrimination with the EEOC. 29 C.F.R. 1601.13(a)(4)(ii)(B). The failure to file within the allotted time renders the charge untimely and precludes claimant from bringing an action in court. *Koelsch v. Beltone Elec. Corp.*, 46 F.3d 705, 707 (7th Cir. 1995).

Plaintiff filed a timely charge alleging national origin discrimination on March 19, 2009. (Ex. 3). On October 1, 2009, Plaintiff sent a letter to the EEOC asking that retaliation be added to his charge. (Ex. 4). On November 6, 2009, <u>528 days</u> *after* the alleged adverse action (Plaintiff's May 27, 2008 non-renewal), Plaintiff filed an amended charge adding a claim of retaliation. (Ex. 5). The November 6, 2009 filing is untimely because it was filed outside the 300-day period.

2

In what appears to be an attempt to remedy his failure to timely file the retaliation charge, Plaintiff alleges that "[t]he only difference in the amended charge is that the box for retaliation was checked. The body of the charge remained the same." (Ex. 1, ¶8). A reading of the charges establishes that this statement is false. (Ex. 3,5).[1] The College presumes that Plaintiff is claiming that his untimely November 19, 2009 charge relates back to his March 19, 2009 charge.[2] Plaintiff's claim fails because his amended charge alleges a new theory of recovery.

The circuits that have addressed whether an untimely amended charge alleging retaliation relates back to a timely charge of discrimination have answered no. In *Simms v. Oklahoma ex. rel. Dept. of Mental Health and Substance Abuse Serv.*, plaintiff filed several charges with the EEOC; the second charge filed on October 31, 1994 alleged race discrimination based upon a failure to promote; on July 15, 1996, plaintiff filed an amendment to his second charge which alleged retaliation based on failure to promote. Plaintiff argued that the amended charge was part of the timely-filed second charge. The court rejected this argument because the 1996 amendment alleged a new theory of recovery, retaliation, which was not raised in the second charge in any way. 165 F.3d 1321, 1326-1327 (10th Cir. 1999).[3]

---

[1] In addition to now checking the box for retaliation, Plaintiff amended the narrative portion of the amended charge as follows (underline represents new text not included in the original charge): "...On or about April 7, 2008 Respondent requested that I submit to a second fingerprint examination. I protested and complained to Respondent of racial discrimination. Consequently, on May 27, 2008 my contract was not renewed, I was terminated. I believe I have been discriminated against because of my national origin, Hispanic, and retaliated against for engaging in protected activity in violation of Title VII of the Civil Rights Act, as amended. (Ex. 5).

[2] "A charge may be amended...to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received." *See* 29 C.F.R. 1601.12.

[3] The court further reasoned that prohibiting late amendments that add new theories of recovery furthers the goals of the statutory filing period—giving the employer notice and providing opportunity for administrative investigation and conciliation. *Id. See also Hopkins v. Digital Equip. Corp.*, 1998 WL 702339, at *2 (S.D.N.Y. Oct. 8, 1998) (holding that retaliation and disability claims in amended charge did not relate back to date of original charge, alleging only race discrimination, "even though those claims are based on incidents described in the original charge, since neither disability nor retaliation flow from race discrimination claims.")

3

The Seventh Circuit addressed the issue of relation back involving two discrimination charges in *Fairchild v. Forma Scientific, Inc.* 147 F.3d 567 (7th Cir. 1998). There, plaintiff filed a timely charge of age discrimination in June of 1994; in October of 1995, plaintiff amended his charge to add a claim of disability discrimination. Plaintiff argued that the untimely disability discrimination charge related back to his timely age discrimination charge because both arose from the same set of facts. The court disagreed, holding that an untimely amendment that alleges an entirely new theory of recovery does not relate back to a timely filed original charge. Plaintiff's amended charge added "an additional basis for legal liability, not additional acts."[4] *Id.* at 575-577.

Based on the above, Plaintiff's retaliation charge was filed <u>228 days</u> *too late*, and he should be precluded from pursuing a retaliation claim against the College. Plaintiff's claim of retaliation is based on facts and a theory of recovery which did not appear in his timely charge of discrimination. Specifically, Plaintiff alleges for the first time that he "complained of discrimination" and "consequently" his contract was not renewed. As such, Plaintiff's amended charge of retaliation does not relate back. Thus, the College is entitled to judgment on Count II.

**B.     Plaintiff Cannot Establish A *Prima Facie* Case Of National Origin Discrimination.**

In Count I brought pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), Plaintiff alleges that he was required to provide an initial set of fingerprints, a second set of fingerprints, and subjected to a more thorough CBC because of his national origin, rather than because all new hires are required to submit to a CBC, his non-fingerprint background check was returned identifying multiple convictions, and the results of the initial fingerprint CBC were never received by the College. Plaintiff further alleges that his

---

[4] As in *Simms*, the Seventh Circuit in *Fairchild* also relied upon the policy behind the charge filing requirement.

4

employment was terminated because of his national origin, rather than non-renewed after the 2008 Season because of his poor communication with College staff, student-athletes and officials, and rule violations. Plaintiff's claims of discrimination have no legal or factual support, and the College is entitled to summary judgment on Count I.

### 1. Plaintiff Has Not Presented Sufficient Factual Evidence To Establish Direct Evidence Of Discrimination.

Plaintiff claims that the College required him to submit fingerprints for a further CBC because he is Hispanic (Ex. 10, pp. 93-94). At deposition, Plaintiff testified that when he went to submit fingerprints in October of 2007, a member of the College's Police Department, *whom he cannot identify*, told him that his "name had triggered markers in their system." (Ex. 10, pp. 91-93). Plaintiff admits that he did not ask if he was being fingerprinted *because of his last name* or because his name came back with hits indicating convictions. (*Id.* at 93). However, Plaintiff appears to be arguing that this "action" constitutes direct evidence of discrimination.

The Seventh Circuit defines direct evidence as "evidence which if believed by the trier of fact will prove the particular fact in question without reliance on inference or presumption." *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997). The evidence "need not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question." *Oates v. Discovery Zone*, 116 F.3d 1161, 1170 (7th Cir. 1997). When offering discriminatory remarks as direct evidence of discrimination, the plaintiff must show that the statements were made by the decision-maker responsible for the adverse job action. *Robinson v. Chicago Transit Auth.*, 1999 WL 409888, at *4 (N.D. Ill. June 7, 1999).[5] For example, in *Walker v. Doctors Hosp. of Hyde Park*, the court rejected plaintiff's argument that comments

---

[5] Stray remarks by non-decision makers, if unrelated to the employment decision, are insufficient to demonstrate that the employer relied on discriminatory criteria in making its decision. *Price-Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989).

5

made by a co-worker concerning African Americans constituted direct evidence of discrimination. The court reasoned that the direct evidence consisted only of plaintiff's uncorroborated deposition testimony, the co-worker was not involved in the termination decision, and there was no evidence that the co-workers stray remarks influenced the employment decision. 110 F.Supp.2d 704, 711 (N.D. Ill. 2000).[6]

Here, the allegedly discriminatory comment pertains to the October 2007 request that Plaintiff provide fingerprints for a further CBC. Assuming, *arguendo*, that a CBC constitutes an actionable adverse action (*see* Part II.B.2.b below), Plaintiff cannot satisfy his burden because he has presented no evidence to corroborate his testimony or shown that the *unidentified* police officer who allegedly made this comment was responsible for or influenced the decision to require Plaintiff to undergo a fingerprint CBC. Plaintiff acknowledges that it was the College's Human Resources Department that informed him of the need to submit fingerprints. (Ex. 10, 134-135) Moreover, the evidence demonstrates that Plaintiff was required to submit to a fingerprint CBC not because he is Hispanic, but because the ISP results of his non-fingerprint CBC[7] indicated multiple conviction hits and a need for fingerprints. (SMF ¶¶26-27; Ex. 21). Notably, Plaintiff had a criminal history as evidenced by his guilty pleas to a DUI and criminal damage to property. (SMF ¶¶23-24). The College has required such further fingerprint CBCs for other non-Hispanic employees, before, during, and after Plaintiff's employment. (SMF ¶¶41-42; Ex. 8, 9). Thus, Plaintiff has failed to present direct evidence of discrimination.

2. **Plaintiff Cannot Establish A Claim of National Origin Discrimination Using the Indirect Method.**

---

[6] *See also Allen v. Dominick's Finer Foods, Inc.*, 1999 WL 1102692, at *2 (N.D. Ill. Nov. 24, 1999) (summary judgment warranted because plaintiff failed to introduce evidence linking the uncorroborated racial slurs allegedly made by various subordinate employees to the employer's decision to terminate).

[7] The non-fingerprint CBC was based upon Plaintiff's name, date of birth, social security number and gender.

Since Plaintiff has no direct evidence, the College will address his claim using the burden shifting method in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under this method, Plaintiff must establish a *prima facie* case of discrimination by showing that: (1) he is a member of a protected class, (2) he performed his job satisfactorily, (3) he suffered an adverse employment action, and (4) similarly situated non-Hispanic employees were treated more favorably. *Moser v. Ind. Dept. of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005). Plaintiff cannot establish the second, third (as to the CBC) and fourth elements of his *prima facie* case.

### a. Plaintiff was not performing his job satisfactorily.

Plaintiff cannot establish the second element of a *prima facie* case of national origin discrimination because the facts demonstrate that his performance did not meet the College's expectations. Plaintiff violated College and NJCAA rules, his coaching/recruiting philosophy conflicted with that of the College, and he demonstrated poor communication with others.

What matters in a discrimination case is not the employee's past performance, but whether he was meeting the employer's expectations at the time of the adverse action. *Johal v. Little Lady Foods, Inc.*, 434 F.3d 943 (7th Cir. 2006). An employee's admission that he violated a work rule is enough to establish that an employee did not meet his employer's legitimate expectations. *Contreras v. Suncast Corp.*, 237 F.3d 756, 760-61 (7th Cir.2001). "An employee's self-serving statements about [his] ability . . . are insufficient to contradict an employer's negative assessment of that ability. *Williams v. Seniff*, 342 F.3d 774, 789 (7th Cir. 2003). "Each plaintiff must . . . advance real proof that [he] adequately satisfied the demands of the workplace, rather than conclusory assertions regarding [his] qualifications." *Miller v. Univ. of Chicago*, 2007 WL 317028, *5 (N.D. Ill. Jan. 29, 2007).[8]

---

[8] Moreover, "the employer is still entitled to determine that the deficiencies are legitimate so long as they are set in good faith, and the court's job is "only [to] determine if the employee met them." *Id.*

7

In *Fane v. Locke Reynolds, LLP*, the Seventh Circuit held that the plaintiff's evidence (completing assignments, no prior disciplinary warnings, and pay increases) that she was meeting her employer's expectations at the time of her discharge was insufficient to overcome her employer's evidence that she was not meeting its conduct expectations following a client complaint about her communication style coupled with an abrasive e-mail she sent to co-workers and the manner in which she addressed a senior partner. 480 F.3d 534, 540 (7th Cir. 2007).[9]

As in *Fane* and *Herron*, Plaintiff did not meet the College's conduct expectations. First, Plaintiff admits that he violated NJCAA rules by repeatedly using the word **"fuck"** when addressing an umpire during a game and by disregarding an official's directive to return to the dugout. (SMF ¶¶68-69) (emphasis added). Players, coaches and spectators witnessed Plaintiff charging the field and stating as follows to the umpire (SMF ¶71): "what the **fuck** are you doing; how the **fuck** can you give a warning for that; that's **fucking** awful; why the **fuck** are you giving me a warning; what the **fuck** are you doing; you don't know what the **fuck** my pitcher is thinking." (SMF ¶68; Ex. 10, pp. 185-189) (emphasis added). Plaintiff was ejected from the game and subsequently suspended by the NJCAA. (SMF ¶70).

Second, Plaintiff permitted a baseball player to drive an unauthorized vehicle onto the baseball field without permission. (SMF ¶¶55-57). Third, athletic department staff complained about Plaintiff's conduct to Spiwak. (SMF ¶60). To that end, Spiwak counseled Plaintiff about his treatment of a Buildings and Grounds employee and instructed him not to have any further contact with that employee regarding the field. (SMF ¶¶60-61). Plaintiff admits that Spiwak told him to "foster a more positive relationship with faculty and staff at the College." (Ex. 10, pp. 181-183).

---

[9] *See also Herron v. Daimler Chrysler Corp.*, 388 F.3d 293, 300 (7th Cir. 2004) (holding that plaintiff who performed some aspects of his job well, but had a confrontational and disrespectful attitude, could not show that he was meeting his employer's legitimate expectations).

8

Finally, Spiwak believed that Plaintiff's coaching and recruiting philosophy conflicted with that of the College. Spiwak received complaints from baseball players returning from the 2007 season that Plaintiff was not treating them fairly, and Spiwak counseled Plaintiff about his treatment of returning baseball players. (SMF ¶66, 67). Additionally, although Plaintiff knew that the College wanted to recruit in-district athletes, Spiwak believed that Plaintiff was focused on recruiting an "elite" baseball team, including out-of-district athletes. (SMF ¶64; Ex. 16, p. 5).

Based upon the above, Plaintiff cannot establish that his performance was acceptable to the College. Accordingly, the College is entitled to summary judgment on Count I.

### b. The College's CBC does not constitute an actionable adverse action.

Plaintiff claims that he was subjected to two adverse actions: (1) the College's actions relative to his CBC; and (2) the decision not to renew his employment. The College does not dispute that a non-renewal decision can constitute an adverse action. However, the College's CBC requirement and related actions do not constitute an actionable adverse action.

In order to demonstrate an adverse action, "the employee must be able to show a quantitative or qualitative change in the terms or conditions of employment." *Haywood v. Lucent Tech. Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). To be actionable, adverse employment actions must be "materially adverse" and "more than a 'mere inconvenience or an alteration of job responsibilities.'" *Oest v. Ill. Dept. of Corrections*, 240 F.3d 605, 612 (7th Cir. 2001).

The Seventh Circuit has not specifically addressed whether a CBC constitutes an actionable adverse action. The circuits that have addressed this issue have answered no. *See Laurence v. Gateway Health Sys.*, 2008 WL 2097390, at *7 (M.D. Tenn., May 16, 2008) (holding that being required to submit to a background check, experiencing paperwork and administrative problems with health care benefits, and having direct deposits stopped failed to

9

show a materially adverse employment action as these events fall into the category of frustrating, but not materially adverse, workplace inconveniences).[10]

On the issue of conditions of employment, in *Place v. Abbott Laboratories*, the Seventh Circuit found no actionable adverse action where Abbott, pursuant to a discretionary policy, required plaintiff to submit to an independent medical exam following threats she made to co-workers, emotional problems which resulted in a leave of absence, and her continuing anger at the company. 215 F.3d 803, 809-810 (7th Cir. 2000). Also, in *Stockett v. Muncie Ind. Transit Sys.*, the Seventh Circuit found that requiring an employee to submit to a drug test did not constitute an adverse employment action. 221 F.3d 997, 1001 (7th Cir. 2000).[11]

Here, Plaintiff, like all other new hires, was required to submit to a CBC as a condition of employment. (SMF ¶11). Plaintiff, however, could not be cleared for employment through the non-fingerprint CBC because multiple convictions were returned based upon his biographical information and a fingerprint CBC was required to determine if the convictions pertained to him. (SMF ¶¶26-27; Ex. 21). Plaintiff submitted fingerprints in October 2007; however, the College never received the results of that CBC. (SMF ¶¶28,30). Consequently, on April 7, 2008, Plaintiff was asked to provide a second set of fingerprints. (SMF ¶31; Ex. 23). On May 21, 2008, Plaintiff was cleared for employment without submitting fingerprints again. (SMF ¶¶32-35).

While the College's CBC process *may* have been frustrating or inconvenient to Plaintiff, the College was following its CBC policy and procedures applicable for use when an employee's

---

[10] *See also Catanzaro v. City of N.Y.*, 2011 WL 335648, at *6 (S.D. N.Y., Jan. 25, 2011) (holding that background investigation was a condition of employment and is not more than an inconvenience); *Chambers v. Walt Disney World*, 132 F.Supp.2d 1356, 1368 n. 13 (M.D. Fla. 2001) (holding that completing a criminal background check on an employee does not rise to the level of an adverse employment action – to hold otherwise would discourage employer forethought and expose employer to liability for negligent retention and hiring).

[11] *See also Young v. Chicago Transit Auth.*, 189 F.Supp.2d 780 (N.D. Ill. 2002) (requiring plaintiff to submit to drug test not an adverse employment action).

non-fingerprint CBC is returned identifying multiple convictions. As such, Plaintiff's claim that he suffered an adverse action from the CBC process fails.

        **c.     Similarly situated non-Hispanic employees were not treated more favorably than Plaintiff.**

Plaintiff cannot establish the fourth element of his *prima facie* case of discrimination, that similarly situated employees were treated more favorably than he was. The "similarly situated calculus requires a detailed comparison of employees, and differentiating or mitigating circumstances are addressed with a high degree of specificity" from the perspective of the employer. *Bituin v. Supervalu Holdings, Inc.*, 274 F. Supp. 2d 977, 983 (C.D. Ill. July 29, 2003). "To prove that other persons are similarly situated, a plaintiff must demonstrate that such individuals were nearly identical to him in all relevant respects." *Sellars v. City of Gary*, 453 F.3d 848, 850 (7th Cir. 2006).[12]

In *Lucas v. Chicago Transit Auth.*, the Seventh Circuit granted the employer's motion for summary judgment because, "Mr. Lucas was the *only employee* who made a comment disparaging the supervisor's order." Because Mr. Lucas "provides no similarly situated employee who engaged in the same or similar conduct [he] has failed to meet his burden with respect to this allegedly discriminatory action." 367 F.3d 714, 732 (7th Cir. 2004).[13]

With regard to the CBC process, Plaintiff has not identified any employee who was not required to submit to a non-fingerprint CBC. (SMF ¶39). Nor has Plaintiff identified any employee whose non-fingerprint CBC was returned identifying multiple convictions, but who was not asked to provide fingerprints for a further CBC. (SMF ¶40). In fact, Plaintiff admits that

---

[12] "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-618 (7th Cir. 2000).

[13] *See also Burks*, 464 F.3d 751 (holding that plaintiff was not similarly situated to employees who did not also fail to meet deadlines or follow directions).

11

his Caucasian assistant coach was asked to provide fingerprints for a further CBC. (SMF ¶41). Plaintiff further admits that he never had to provide the second set of fingerprints (SMF ¶35), and that he and his assistant coach were cleared for continued employment by Chief Alsup through the Law Enforcement Agencies Data System ("LEADS") (Ex. 10, 125-126; Ex. 25, 26). Also, prior to and after 2007-2008, the College required employees to submit fingerprints after their non-fingerprint CBCs were returned indicating convictions. (SMF ¶42).

Regarding the decision to not renew Plaintiff's employment, Plaintiff has not identified a single non-Hispanic employee who engaged in the same or similar conduct as he did, but was treated more favorably. Plaintiff has presented no evidence that there were any non-Hispanic coaches who violated rules or demonstrated poor communication with athletic department staff, officials, and student-athletes, and despite counseling by Spiwak, were treated more favorably. Moreover, Plaintiff was the *only* coach or member of the College's athletic department staff who was ejected *for any reason* from a game and suspended by the NJCAA during 2007-2008. (Ex. 8; Ex. 16, p. 6). Plaintiff admits that he was not the only coach whose contract was not renewed after the 2008 Season – Lewis' (Caucasian) and Kristin Zbikowski's (non-Hispanic) coaching contracts were also not renewed. (SMF ¶¶75-76). Clearly, Plaintiff cannot establish the fourth element of his *prima facie* case, and the College is entitled to summary judgment on Count I.

### C. Assuming, *Arguendo*, That Plaintiff's Retaliation Claim Is Not Barred, Plaintiff Cannot Establish A *Prima Facie* Case Of Retaliation.

Plaintiff claims that his employment was "terminated" in retaliation for sending the April 9, 2008 e-mail, in which he "objected to being singled out and treated differently because of his national origin" in connection with the College's requests that he provide fingerprints for a further CBC. (Ex. 1, ¶¶68 and 69; Ex. 10, pp. 118; 139). Plaintiff has no direct evidence of a retaliatory motive. To establish a *prima facie* case of retaliation through circumstantial evidence,

12

Plaintiff must show that he engaged in statutorily protected expression, he suffered an adverse employment action, and a causal link between the protected expression and the adverse action exists. *Moser*, 406 F.3d at 903. Alternatively, Plaintiff can prove retaliation under the indirect method by showing that he engaged in protected activity, he met the College's performance expectations, he suffered an adverse action, and was treated less favorably than similarly situated employees. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Regardless of the method of proof, Plaintiff cannot establish his claim of retaliation.

### 1. Plaintiff cannot establish a causal connection between the decision not to renew his employment and his alleged protected expression.

To establish a causal link, Plaintiff must produce evidence that his alleged protected activities were "substantial" or "motivating" factors in the College's decision to non-renew his employment. *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000).[14] However, "the mere fact that one event preceded another does nothing to prove that the first event caused the second." *Id.* at 918. To survive summary judgment, the plaintiff must present "some evidence of retaliatory motive other than the timing of her [discharge]." *Burks*, 464 F.3d at 758.

The record is devoid of evidence from which it can be inferred that Spiwak's decision not to renew Plaintiff's employment was motivated by his protected expression. The College acknowledges that Spiwak received a copy of Plaintiff's April 9, 2008 e-mail. However, the only evidence proffered by Plaintiff to support this inference is that Spiwak both hired and fired him. (Ex. 10, p. 137-138). Plaintiff's speculation that Spiwak retaliated against him for sending the e-mail is insufficient to create an issue of material fact. *Moser*, 406 F.3d at 905 ("Ms. Moser's speculation that Ronay manipulated Superintendent Commons *raises no more than a metaphysical doubt* as to whether the DOC would have disciplined Ms. Moser had she not

---

[14] *See also Moser*, 406 F.3d at 905 (requiring showing that adverse action would not have occurred "but for" the plaintiff's protected activity).

complained"). This is particularly true here where Plaintiff engaged in conduct which violated College and NJCAA rules, and showed poor communication skills.

In addition, the fact that the non-renewal decision occurred approximately 1½ months after Plaintiff sent the April 9, 2008 e-mail is insufficient to give rise to an inference of causation. Mere temporal proximity between a protected activity and an adverse employment action, standing alone – without evidence of other retaliatory animus – is insufficient to establish the requisite causal connection for a *prima facie* case of retaliation. *Pafford v. Herman*, 148 F.3d (7th Cir. 1998).[15]

Even where a temporal proximity between the protected expression and the discharge exists, a plaintiff must still come forward with "other evidence" of retaliation to create the inference of a causal link. *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005). Plaintiff has presented no "other evidence." While Plaintiff appears to argue that Spiwak's purported comments that Plaintiff needed to comply with the College's requests for fingerprints comprise the necessary "other evidence", these inquiries are not probative of retaliatory motive. "To be probative of discrimination, isolated comments must be contemporaneous with the discharge or causally related to the discharge decision making process." *Price-Waterhouse*, 490 U.S. at 277. These requirements are missing because Spiwak did not receive Plaintiff's CBC information and did not know why a fingerprint CBC was ordered (Ex. 11, pp. 139-140), and Plaintiff was cleared for continued employment *prior to* Spiwak's decision at the conclusion of the 2008 Season to not renew Plaintiff's employment. (SMF ¶¶34,77). Moreover, Plaintiff had no guarantee or expectation of continued employment with the College (SMF 74; Ex. 31-35), and

---

[15] Plaintiff's long history of absenteeism negated any inference that this termination was causally connected to a discrimination charge filed one week earlier. *Id. See also Contreras*, 237 F.3d at 765 (four week gap between plaintiff's EEOC charge and his termination was insufficient to establish a causal connection); *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 895 (7th Cir. 2001) (two month period between plaintiff's termination and protected expression did not establish a causal connection).

Spiwak articulated the reasons for his decision. (SMF ¶¶76-77). For these reasons, Plaintiff has no evidence of a causal connection and the College is entitled to summary judgment on Count II.

### 2. Plaintiff was not performing his job duties satisfactorily.

As demonstrated in Part II.B.2.a. above, Plaintiff cannot show that he was performing his job satisfactorily. Thus, he cannot establish the second element of his retaliation claim, entitling the College to summary judgment on to Count II.

### 3. Similarly situated non-Hispanic employees were not treated more favorably than Plaintiff.

As demonstrated in Part II.B.2.c. above, Plaintiff cannot show that similarly situated employees who did not engage in protected expression were treated better than he was. Thus, he cannot establish the fourth element of his retaliation claim, entitling the College to summary judgment on Count II.

### D. Assuming, *Arguendo*, That Plaintiff's Retaliation Claim Is Not Barred, The College Is Entitled To Summary Judgment On Counts I and II Because The College Has Articulated Legitimate, Non-discriminatory and Non-Retaliatory Reasons For Its Actions Which Plaintiff Cannot Rebut.

Even if the Court finds that the record permits Plaintiff to establish a *prima facie* case of discrimination or retaliation, the College is nonetheless entitled to summary judgment on Counts I and II. This is because there is no genuine issue of material fact that the College has articulated legitimate, non-discriminatory and non-retaliatory reasons for the decision to not renew Plaintiff's employment, which he cannot show are pretextual.

If Plaintiff can establish a *prima facie* case of discrimination and retaliation, the burden shifts to the College to articulate a legitimate, non-discriminatory reason for its employment decision. *McDonnell Douglas*, 411 U.S. 792. "A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence" and causes any inference of discrimination created by a *prima facie* case to drop away.

15

*Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 255 n.10 (1981). Once the defendant produces evidence of a legitimate explanation for its employment decision, the plaintiff must show by a preponderance of the evidence that defendant's legitimate explanation was not the true reason, but was a "pretext" for discrimination. *McDonnell Douglas*, 411 U.S. 792, 93 S. Ct. 1817. To prove pretext, a plaintiff must produce *evidence* which would lead a rational trier of fact to conclude that the defendant's explanation for its employment decision is a lie. *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006). In evaluating pretext, "[t]he question is never whether the employer was mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the stated reason, but simply whether the stated reason was *his* reason: not a good reason, but the true reason." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 418 (7th Cir. 2006).[16]

In *Cameli*, plaintiff was terminated as head basketball coach because of (1) a lack of continuity in the basketball program; (2) the performance of the varsity basketball team; and (3) plaintiff's unfair treatment of some of his basketball players. 1997 WL 351193, at *7-8. The court granted defendant's summary judgment motion as to plaintiff's age discrimination claim because plaintiff failed to discredit his employer's reasons for the employment decision. As to the first reason, the court found that "although perhaps unfair, it is not so unworthy of credence as to constitute pretext". As to the second reason, the court found that defendant O'Neal, as principal, was vested with the authority to make personnel decisions based upon his perception of the team's performance and plaintiff's disagreement with O'Neal's assessment was

---

[16] *See also Campbell v. Dominick's Finer Foods*, 85 F. Supp. 2d 866, 873 (N.D. Ill. 2000) ("[t]he fact that an employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual."); *Aguilera*, 234 F. Supp. 2d at 850 ("pretext will not be found in an ill advised, incorrect, or even stupid decision"); and *Pollard v. Rea Magnet Wire Co., Inc.*, 824 F.2d 557, 559 (7th Cir. 1987), *cert. denied*, 484 U.S. 977 (1987) ("[i]f you honestly explain the reasons behind your decision, but the decision was ill-informed or ill-considered, your explanation is not a 'pretext.'")

insufficient to establish pretext. As to the third reason, it did not matter if the player's complaints about plaintiff were true, but whether O'Neal relied on the complaints as a basis for terminating plaintiff – even if his decision was based upon incorrect information. *Id.* at \*9-10.

Likewise, in *Fane*, the Seventh Circuit affirmed summary judgment where an employee was terminated for "rude behavior, insubordination, and not recognizing her own inappropriate behavior," and where the employer believed that such conduct warranted termination and honestly acted pursuant to that belief. 480 F.3d at 541.

In this case, and assuming, *arguendo*, that the College's requests for Plaintiff to submit to a further fingerprint CBC constitutes an actionable adverse action, the record demonstrates that the College required all new hires to submit to a CBC, and that it acted pursuant to its procedures following a return of "multi hit – submit fingpri" from a non-fingerprint background check, as it did before, during, and after Plaintiff's employment. (SMF ¶¶11,18). In addition, no facts suggest that the College lied about its reason to request that Plaintiff submit a second set of fingerprints. Instead, the record demonstrates that Plaintiff needed to submit a second set of fingerprints because the College never received the results from his initial fingerprint submission and the ISP only maintains results for 30 days. (SMF ¶¶21,30-31). Other than Plaintiff's own rank speculation, he points to no fact which suggests that the College invented its reasons for requesting that Plaintiff submit to a further fingerprint CBC. *Karazanos v. Navistar Int'l. Transp. Corp*, 948 F.2d 332, 337 (7th Cir. 1991) (plaintiff's gut feeling of discrimination was too ephemeral to challenge evidence regarding the perspective of the decision-makers).

Likewise, no fact suggests that Spiwak lied about the reasons for the decision not to renew Plaintiff's employment. Instead, the record demonstrates that Spiwak honestly believed: (1) that Plaintiff allowed a student to drive an unauthorized vehicle onto the baseball field

17

without permission; (2) the complaints made by athletic department staff about Plaintiff's demeanor and the need for Plaintiff needed to foster a more positive relationship with College staff; (3) the complaints made by returning baseball players about Plaintiff not treating them fairly; (4) that Plaintiff's coaching and recruiting philosophies conflicted with that of the College; (5) that Plaintiff's conduct during the April 14, 2008 baseball game, his ejection, and subsequent suspension would not be tolerated by the College; and (6) that Plaintiff demonstrated poor communication with others. (SMF ¶¶55-73,76; Ex. 16, 39). The record likewise is without evidence that the decision not to renew Plaintiff's employment was motivated by his national origin or alleged protected expression.

Additionally, to the extent that Plaintiff admits the conduct which resulted in his ejection from the April 14, 2008 baseball game (and subsequent ejection), that he was made aware of employee complaints during his employment, that Spiwak advised him to foster a more positive relationship with staff, and that Spiwak discussed with him the importance of recruiting in-district athletes and treating all players fairly, he can only attack the College's business judgment, which is insufficient to establish pretext. (SMF ¶¶57,59-62,64,67-73). *See Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 824 (7th Cir. 2006). Moreover, as demonstrated by the above-cited cases, even if Spiwak was wrong in his assessment of Plaintiff's violation of a work rule, communications with athletic department staff, student athletes, and umpires, coaching/recruiting philosophy, or the manner in which he portrayed the athletic department, absent evidence that he lied about the reasons for non-renewal decision, Plaintiff cannot create a material question of fact about whether the College's articulated reason for the non-renewal decision is a pretext for an unlawful motivation. This is particularly true, here, where Plaintiff must also overcome the inference of *nondiscrimination* which arises from the fact that Spiwak is

the same person who recommended his hire and non-renewed his employment. (SMF ¶¶43, 75; Ex. 10, pp. 137-138). Since Spiwak participated in both decisions, and Plaintiff's national origin was Hispanic both when he was hired and non-renewed, a strong inference exists that discrimination did *not* motivate Spiwak's decision.[17]

The record establishes that the College has articulated legitimate reasons for requesting that Plaintiff submit to a further CBC and for the decision not to renew his employment. The record does not permit Plaintiff to produce facts which even suggest that these reasons are a pretext for discrimination and retaliation. As a result, the College is entitled to summary judgment on Counts I and II.

### III. CONCLUSION

As demonstrated above, the undisputed material facts fail to support Plaintiff's claims. The College respectfully requests that this Honorable Court grant its Motion for Summary Judgment, enter an order dismissing the Complaint with prejudice, and for such other and further relief as is just and appropriate.

Respectfully submitted,
**WILLIAM RAINEY HARPER COLLEGE**

By: _____/s/ Catherine R. Locallo_____
One of the Attorneys for Defendant

Frank B. Garrett III (6192555)
Catherine R. Locallo (6298278)
ROBBINS, SCHWARTZ, NICHOLAS,
 LIFTON & TAYLOR, LTD.
55 W. Monroe St., Suite 800
Chicago, Illinois 60603
(312) 332-7760
(312) 332-7768 (fax)

---

[17] *See Chiaramonte v. Fashion Bed Group*, 129 F.3d 391 (7th Cir. 1997) (finding inference of nondiscrimination when the same person hires and fires a plaintiff).